## IN THE CIRCUIT COURT FOR BALTIMORE CITY

| | | |
|---|---|---|
| ANDRE BOURGEOIS, | * | |
| 100 Harborview Drive 1204 | | |
| Baltimore, Maryland 21230-5425, | * | |
| | | |
|     On behalf of himself and a | * | |
|     Class of others similarly situated, | | |
| | * | Case No. _____ |
|        Plaintiffs, | | |
| | * | |
|   v. | | |
| | * | |
| LIVE NATION ENTERTAINMENT, INC. | | |
| 9348 Civic Center Drive | * | |
| Beverly Hills, California 90210 | | |
| | * | |
| MONUMENTAL TICKETING LIMITED | | |
| PARTNERSHIP | * | |
| Capital Centre | | |
| One Harry S. Truman Drive | * | |
| Landover, Maryland 20785 | | |
| | * | |
|     and | | |
| | * | |
| LYRIC PRODUCTIONS, LLC | | |
| d/b/a LYRIC OPERA HOUSE | * | |
| 110 West Mount Royal Avenue | | |
| Baltimore, Maryland 21201 | * | |
| | | |
|     Defendants. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiff Andre Bourgeois ("Named Plaintiff" or "Plaintiff"), through his undersigned attorneys, on behalf of himself and all others similarly situated, sues Defendants Ticketmaster Entertainment, LLC n/k/a Live Nation Entertainment, Inc. ("Ticketmaster Entertainment"), Ticketmaster Group Limited Partnership n/k/a Monumental Ticketing Limited Partnership ("Monumental Ticketing," with Ticketmaster

Entertainment collectively "Ticketmaster") and Lyric Productions, LLC d/b/a Lyric Opera House (the "Lyric").

## I.   INTRODUCTION

2.     This is a class action to recover illegal charges imposed in connection with the sales of tickets for admission to events in Baltimore City as a result of the Defendants' conspiracy.   These illegal charges take the form of add-on fees, characterized as "service charges" or other names, charged on top of the advertised prices of tickets. The fees are illegal because (1) ticket agencies which sell tickets to events in Baltimore must be licensed (and Defendants are not); (2) licensed ticket agents are limited to an add-on "service charge" of $0.50 per ticket for events in Baltimore City, which is exceeded in each and every ticket sale by Defendants; (3) a portion of the illegal "service charges" denominated as Ticketmaster's fees are actually not for any services by Ticketmaster – instead, they are paid as kickbacks to the Lyric, allowing the Lyric itself to collect more from its customers than the advertised ticket prices.

3.     Defendants' actions in charging and conspiring to charge illegal "service charges" and secret kickbacks are in violation of the Baltimore City Code, which regulates the activities of ticket agencies, as well as the federal Racketeer Influenced Corrupt Organizations Act ("RICO").

4.     The Defendants, however, have completely ignored the restrictions of the law and have criminally overcharged and conspired to overcharge their customers. They have reaped huge financial windfalls from operating outside of the rules which apply to them. As a result of Defendants' actions described herein, Plaintiff and the putative class (the "Class") and subclass (the "Subclass") defined herein assert claims for Money Had

2

and Received, Negligent Misrepresentation, violation of the Maryland Consumer Protection Act, Deceit by Non-Disclosure or Concealment, and violation of the federal Racketeer Influenced Corrupt Organizations Act ("RICO").

5.      Through this class action lawsuit, Plaintiff seeks to recover, on behalf of himself and the Class, the illegal service charges imposed by the Defendants – including kickbacks to the Lyric on top of its advertised ticket prices - statutorily trebled damages and punitive damages, injunctive relief, and attorney's fees.

## II.   PARTIES

6.      Defendant Ticketmaster Entertainment is a Delaware corporation with its principal place of business in California. Ticketmaster Entertainment operates a ticket agency business and regularly sells tickets for admission to events in Baltimore City.

7.      Defendant Monumental Ticketing is a Maryland limited partnership with its principal place of business in Maryland. Monumental Ticketing operates a ticket agency business and regularly sells tickets for admission to events in Baltimore City. Upon information and belief, Monumental Ticketing has an exclusive license from Ticketmaster Entertainment to sell tickets for admission to events in Baltimore City on behalf of Ticketmaster Entertainment.

8.      Defendant Lyric is a Maryland limited partnership with its principal place of business in Maryland. The Lyric operates a venue for performances in Baltimore City, and contracts with the other Defendants for the sale of tickets to performances at that venue, and also acts as a ticket agent – or "Ticketmaster Outlet" – for Ticketmaster and sells tickets to events at other venues in Baltimore City and elsewhere.

3

9.     Plaintiff Andre Bourgeois is a natural person who is a citizen of the State of Maryland, residing in Baltimore City.

## III.   JURISDICTION AND VENUE

10.    Subject matter jurisdiction is proper under MD. CODE ANN., CTS. & JUD. PROC. § 1-501.

11.    Venue is proper under MD. CODE ANN., CTS. & JUD. PROC. § 6-201(a) because Defendants each carry out regular and substantial business in Baltimore City and regularly solicit business from residents of Baltimore City.

## IV.   FACTS APPLICABLE TO ALL COUNTS

### A. Ticketmaster's Service Charges in Violation of the Baltimore City Code.

12.    Ticketmaster is engaged in the business of acting as a ticket agency and selling tickets, for profit, to various events in Baltimore City, including musical, sports, arts, and other entertainment events.

13.    When Ticketmaster sells tickets to events in Baltimore City, it imposes substantial fees in addition to the face value of each ticket ("service charges" – also known as "convenience charges," "processing fees," "premium delivery charges," or by other names). These "service charges" – which hereinafter refer to all fees imposed in addition to the face value of each ticket – are charged and imposed separately from, and in addition to, the face value of the tickets themselves.

14.    Ticketmaster Entertainment, LLC – now part of Ticketmaster Entertainment as defined herein - expressly admitted in its 2010 10-K filing with the Securities and Exchange Commission (the "2010 10-K") that it adds on charges in addition to the face value of all of the tickets it sells, as follows: "Consumers who

4

purchase tickets through the Company pay an amount equal to the ticket face price, plus a per ticket convenience charge, a per order "order processing" fee and, if applicable, a premium delivery charge. The Company remits the entire face value of the ticket to the client." Similarly, in Ticketmaster Entertainment's 2011 10-K, it admitted that its revenue "of convenience and order processing fees" on the tickets it sells is recorded "net of the face value of the ticket" sold.

15.     The 2010 10-K also admits that Ticketmaster is a ticket agency, and retains service charges it imposes, as follows: "The ticketing segment is primarily an agency business that sells tickets for events on behalf of our clients and retains a convenience charge and order processing fee for our services." According to Ticketmaster's publicly available documents, this "ticketing segment" obtained revenues well in excess of $1 billion in 2009, on sales of tickets valued at $8 billion. Similarly, according to Ticketmaster's publicly available documents, Ticketmaster Entertainment obtained approximately $1 billion in revenue on ticketing in 2010 as well.

16.     The "service charges" imposed vary, but average well over ten times the $0.50 limit imposed by the Baltimore City Code. As stated in the 2010 10-K, "During the year ended December 31, 2009, average revenue per ticket (which primarily includes per ticket convenience charges and per order 'order processing' fees, as well as certain other revenue sources directly related to the sale of tickets) was $7.82."

17.     The imposition of these exorbitant add-on fees in sales of tickets to Baltimore City events is illegal. Baltimore City has placed substantial restrictions on the sale of tickets at *any* price above the face value of those tickets for more than 40 years, and made it a criminal act:

5

§ 55-1. Ticket scalping.

(a) Prohibited conduct.
It shall be unlawful for any person, firm, association, or corporation to sell or exchange, or offer to sell or exchange, for more than the price stated thereon or for remuneration in any form greater than such price, any ticket or tickets for admission to a public amusement, athletic, educational, or other event in the City of Baltimore.

\*     \*     \*

(c) Penalties.
(1) A violation of the provisions of this section shall be deemed to be a misdemeanor and, upon conviction thereof, shall be subject to a fine of not more than $1,000.
(2) The sale or exchange of, or offer to sell or exchange, each ticket in violation of the provisions of this section shall be treated as a separate offense.

Baltimore City Code, Article 19, § 55-1.

18.     The Baltimore City Code broadly prohibits the business of selling tickets, whether at face value or for more than face value, by anyone who is not licensed as a "ticket agency" by the Baltimore City Director of Finance:

§ 21-1. License required
No person shall engage in the business of selling the tickets, cards, or other tokens evidencing the right of admission to exhibitions, performances, games, or sports conducted by licensees under licenses issued by the State of Maryland or City of Baltimore, or shall open or conduct an office, agency, or other place by whatever name known at which such tickets are sold or offered for sale, unless a license shall have been issued to such persons by the Director of Finance upon the payment of the fee herein prescribed.

Article 15, § 21-1.

19.     The Baltimore City Code provides a limited exception to its "ticket scalping" provisions for companies who are licensed ticket agencies, and allows such

6

licensed entities to charge a prescribed "service charge" of *up to fifty cents* ($0.50) for each ticket sold:

> § 21-2. Maximum service charge.
> A licensee under this section, or any officer or employee thereof, shall not directly or indirectly exact, accept, or receive for any ticket or token of admission to an exhibition, performance, game, or sport conducted by a licensee under a license granted by the State of Maryland, or the City of Baltimore, any greater amount than 50¢ in excess of the sum of the regular or established price or charge therefor printed on the face of such ticket, plus the amount of any tax imposed by the Government of the United States or by the State of Maryland upon such ticket or the right of admission thereunder.

Article 15, § 21-2.

20.     Ticketmaster is not, and at all times relevant to this lawsuit was not, licensed by the Director of Finance as a "ticket agency."

21.     The Baltimore City Code makes no exception for Ticketmaster from its ticket scalping prohibitions or ticket agency licensing requirements.

22.     Pursuant to Baltimore City Code, Article 19, § 55-1, and Article 15, §§ 21-1 and 21-2, Ticketmaster is therefore prohibited from selling tickets to events in Baltimore City at any price greater than face value. Upon information and belief, Ticketmaster charged more than face value for each and every ticket it sold to events in Baltimore City, as each and every ticket included service charges in addition to the face value of each ticket.

23.     Even if Ticketmaster was licensed by the Director of Finance as a "ticket agency," it would be prohibited from charging more than $0.50 per ticket in service charges. Upon information and belief, Ticketmaster charged more than $0.50 per ticket in service charges for every single ticket it sold to events in Baltimore City.

7

**B.** *Ticketmaster Kicks Back Money to the Lyric from Ticketmaster's Illegal Service Charges, and the Lyric's Kicks Back Money to Ticketmaster for "Restoration Fees."*

24.     The Lyric advertises its ticket prices to events at the venue to induce consumers to purchase those tickets.

25.     Unknown to consumers, however, the Lyric has conspired with Ticketmaster to obtain more money from each ticket sold than the advertised price for each ticket.

26.     Ticketmaster is the exclusive ticket agent for events at the Lyric.

27.     Ticketmaster imposes service charges on the sale of each ticket to an event at the Lyric.

28.     For each ticket sold to an event at the Lyric, Ticketmaster pays the Lyric a kickback of a portion of the "service charge" revenue.

29.     Accordingly, the Lyric's advertisements of its ticket prices are false and deceptive – in the Lyric's bait-and-switch advertising technique, for each ticket to a Lyric event, the Lyric collects more money from consumers than its advertised prices.

30.     This portion of the supposed "service charges" paid to the Lyric by Ticketmaster in connection with tickets purchased to events at the Lyric are not for service at all.

31.     The Lyric's conspiracy with Ticketmaster results in undisclosed charges to consumers by the Lyric, and deceives consumers into paying the Lyric more for each ticket purchased than the advertised ticket price.

**C.** *The Lyric's Illegal Activity as an Unlicensed Ticket Agent for Other Venues*

8

32.     As part of the Defendants' conspiracy, and as a further inducement for the Lyric to allow Ticketmaster to sell tickets to Lyric events and collect illegal service charges to those events, the Lyric acts as a "Ticketmaster Outlet," selling tickets to events at other venues, including other venues in Baltimore City, and collecting additional illegal service charges in connection with each such ticket sale.

33.     Each time the Lyric sells a ticket to an event at another venue, it collects service charges from the customer.

34.     Each time the Lyric collects service charges from customers for the sale of tickets to events at other venues, it is acting as a ticket agent under the Baltimore City Code.

35.     Each time the Lyric collects service charges from customers for the sale of a ticket to an event at another venue, the service charge collected exceeds $0.50.

36.     Defendants have a duty, pursuant to Baltimore City statutes, to not charge or conspire to charge their customers any amount in excess of the face value of the tickets they sell.

37.     Defendants have a duty to not engage in bait-and-switch and other false advertising techniques.

38.     In each of their ticket sales to Named Plaintiff and other members of the Class, Defendants represented and conspired to misrepresent illegal service charges as legally collectible. In addition, Defendants concealed and conspired to conceal the fact that these so-called "service charges" included kickback components. Named Plaintiff and each member of the Class paid the service charges, demonstrating their reliance on the Defendants' representations. As a result of the Defendants' misrepresentations,

9

Named Plaintiff and the other members of the Class were damaged by the amount of the service charges they paid.

39.     When Defendants sold and conspired to sell tickets to Named Plaintiff and the other members of the Class for events in Baltimore City, charged more than the face value of each ticket, and collected amounts as service charges which were paid as secret kickbacks, Defendants collected and conspired to collect amounts from Plaintiff and the other members of the Class to which were not legally collectible, amounts which Defendants are not entitled under the law, and amounts which this lawsuit seeks to recover on behalf of Plaintiff and the Class.

## V.     FACTS APPLICABLE TO THE NAMED PLAINTIFF

40.     Named Plaintiff, Mr. Bourgeois, a resident of Baltimore City, purchased a ticket to Jackson Browne's November 9, 2009 concert at the Lyric Opera House in Baltimore City.      This Jackson Browne concert was "a public amusement, athletic, educational, or other event in the City of Baltimore" under Baltimore City Code, Article 19, § 55-1.    It also constituted an "exhibition[], [or] performance[] ... conducted by licensees under licenses issued by the State of Maryland or City of Baltimore" under Baltimore City Code, Article 15, §§ 21-1 and 21-2.

41.     Plaintiff's ticket to the Jackson Browne concert had an advertised, face value, price of $52.00 – the established price of the ticket printed on the ticket.

42.     However, in addition to the $52.00 face value of the ticket, Defendants charged and collected and conspired to charge and collect from Plaintiff additional service charges exceeding $12.00 – or more than 20% of the value of the ticket itself.

43.    Defendants represented and conspired to represent to Mr. Bourgeois that the additional service charges imposed on him were legitimate and collectible, and intentionally failed to disclose that a portion of those charges were used to pay kickbacks to the Lyric.

44.    Defendants concealed and conspired to conceal from Mr. Bourgeois that they were not licensed as ticket agencies by the Baltimore City Director of Finance. Defendants also concealed and conspired to conceal from Mr. Bourgeois the fact that Defendants were prohibited by the Baltimore City Code from imposing and collecting the additional service charges which he paid.

45.    Despite full knowledge that Mr. Bourgeois and other Class members could not be legally charged for additional service charges, the Defendants willfully and knowingly charged and conspired to charge Plaintiff and other members of the Class service charges in excess of the face value of each ticket sold by Ticketmaster, as well as in excess of the $0.50 permissible service charges for licensed ticket agencies.

46.    Defendants pocketed and split these illegal service charges, and refused to credit any portion of them to the ticket purchases of Plaintiff and members of the Class.

47.    As a result of Defendants' illegal activities, and misrepresentations and concealments of material fact, Mr. Bourgeois suffered losses and damages in the amount of the service charges he paid in addition to the face value of the ticket to the Lyric event.

## VI.    CLASS ACTION ALLEGATIONS

48.    Named Plaintiff brings this action individually and as a class action pursuant to Md. Rule 2-231 on behalf of a class (the "Class") and subclass (the "Subclass") defined as follows:

11

The Class

All persons or entities who, within the past four years, purchased one or more tickets for admission to an event or events in Baltimore City through Ticketmaster.

The Subclass

All persons falling within the Class who purchased tickets to events held at the venue operated by the Lyric.

Excluded from the Class and Subclass are officers and directors of the Defendants, as well as any personnel of the Court.

49.     The Class and Subclass as defined above are identifiable. The Named Plaintiff is a member of the Class and Subclass.

50.     The Class and Subclass consist, to Plaintiff's information and belief, of thousands of individuals, and are thus so numerous that joinder of all members is clearly impracticable.

51.     There are questions of law and fact which are not only common to the Class and Subclass, but which predominate over any questions affecting only individual members of the Class and Subclass. The predominating questions include, but are not limited to:

> A. Whether the Defendants systematically collected and conspired to collect charges from Class Members which were not permitted under the Baltimore City Code;

> B. Whether the Defendants are ticket agencies under the Baltimore City Code;

> C. Whether the "service charges" collected from Class Members are illegal under the Baltimore City Code;

12

D.  Whether the Defendants charged "service charges" which were actually paid as kickbacks to the Lyric;

E.  Whether the Defendants concealed and conspired to conceal material facts from the Class when charging and collecting fees in excess of the face value of the tickets sold;

F.  Whether the Defendants intentionally and/or negligently failed to disclose material facts to the Named Plaintiff and the Class that Defendants were legally restricted from charging or collecting more than the face value of the tickets they sold;

G.  Whether the Defendants were unjustly enriched by their improper conduct;

H.  Whether the Defendants should be enjoined from further engaging in such improper conduct;

I.  Whether the Defendants were part of a conspiracy that harmed the Class; and,

J.  Whether Named Plaintiff and members of the Class have sustained damages and the proper measure of such damages.

52.     The claims of the Named Plaintiff are typical of the claims of each member of the Class and Subclass, within the meaning of Md. Rule 2-231(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

53.     Plaintiff will fairly and adequately protect the interest of the Class and Subclass.  Named Plaintiff and the Class and Subclass have retained counsel experienced and competent in class actions and complex consumer litigation.

13

54.     Named Plaintiff has no conflict of interest with the Class or Subclass.

55.     The prosecution of the separate actions by individual members of the Class or Subclass would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Md. Rule 2-231(b)(1)(A).

56.     Defendants' actions are generally applicable to the Class and Subclass as a whole, and Plaintiff seeks equitable remedies with respect to the Class and Subclass as a whole within the meaning of Md. Rule 2-231(b)(2).

57.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and Subclass, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Md. Rule 2-231(b)(3). The likelihood that individual members of the Class and Subclass will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. To Plaintiff's knowledge, no other litigation against Defendants is currently pending by other members of the Class and Subclass regarding the violations of the Baltimore City Code discussed herein.

58.     There are no unusual difficulties in the management of this case as a class action.

## VII.    CIVIL RICO SUMMARY

59.     In connection with the activities giving rise to this action, the Defendants acted with malice, intent and knowledge, and with a wanton disregard for the rights of Named Plaintiff and the other members of the Class and Subclass. Among other things, Defendants used Ticketmaster's dominating market position in the business of ticket sales, and its exclusive agreement with venues such as the Lyric, to impose service

14

charges on top of the face value of tickets in violation of Baltimore City law, and to represent that those "service charges" were legitimate and collectible, to enrich themselves at the expense of Plaintiff and the other Class members. In addition, Defendants required Plaintiff and other members of the Class to pay amounts as "service charges" which were not for services at all, but were instead secretly paid as undisclosed kickbacks to the Lyric by Ticketmaster (the "Scalping Racket").

60.     Ticketmaster engaged in the Scalping Racket with numerous co-conspirators, the identity of whom are peculiarly within the knowledge of Defendants. These co-conspirators, including the Lyric, other venues, as well as the individual and corporate owners of Monumental Ticketing and its upstream entities, jointly agreed to facilitate the charging of illegal "service charges" and "Restoration" fees as described herein, and profited from those charges. These other co-conspirators will be identified, among other places, in contracts relating to the sale of tickets to events in Baltimore City, including contracts between Ticketmaster and the venues, contracts between Ticketmaster Entertainment and Monumental Ticketing and its owners, as well as in documents relating to the ownership and ownership structure of Monumental Ticketing (including its limited partners) and its upstream entities.

### A. The Enterprise – Monumental Ticketing

61.     The enterprise Monumental Ticketing was and is an ongoing organization, previously known as the Ticketmaster Group Limited Partnership. This organization is a Maryland chartered corporation which has been in existence since 1991. It has functioned as a continuing unit since the time of its charter – it is a formally chartered business with articles and by-laws, has had a formal hierarchy and chain of command,

15

and has been functioning as an ongoing concern since its inception. It is also an entity separate and apart from the racketeering activity in which it has engaged, both because it is a formally chartered business, and because it has engaged in legitimate business in addition to its involvement in the Scalping Racket described herein.

62.    At all relevant times herein, the "enterprise" described herein, Monumental Ticketing, which is an entity registered with the State of Maryland, operated separately and distinct from Ticketmaster Entertainment and other co-conspirators. Monumental Ticketing was engaged in interstate commerce in that, *inter alia*, the ticket sales which are the subject of the scheme to defraud and the Scalping Racket set forth in this Complaint were consummated using the wires and/or the U.S. Mails, the transactions were funded by a wire or check or electronic credit or debit transaction that originated or was transmitted to a party located outside of Maryland in many, if not all, circumstances, and the U.S. Mails and/or wires were utilized in connection with the acquisition, marketing and sale of the tickets which are the subject of this Complaint in *every* circumstance.

63.    With respect to the Monumental Ticketing racketeering enterprise, at all relevant times herein, in connection with the activities giving rise to this action, Ticketmaster Entertainment conspired with persons and entities including persons with ownership interests in Monumental Ticketing as well as other co-conspirators to engage in the various activities set forth herein, agreed to participate in the operation of the conspiracy and scheme to defraud Plaintiff and other customers, and the co-conspirators aided and abetted one another in these activities, all proscribed by both Maryland and federal law.

16

### b. The Alternative Association-in-Fact Enterprise

64.     Alternatively, through the agreements between and among Ticketmaster and co-conspirators including the Lyric and other venues, as well as Monumental Ticketing, Ticketmaster and these co-conspirators formed an association-in-fact with each other which constitutes an "enterprise" engaged in illegal activities, including the Scalping Racket, affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).   It has functioned as a continuing unit for more than two decades – although informally organized, it has had a hierarchy and chain of command, and has been functioning as a coherent and ongoing association-in-fact since at least 1991.   This association-in-fact is separate and apart from the racketeering activity in which it has engaged, and it has engaged in legitimate business in addition to its involvement in the Scalping Racket described herein.

65.     In this association-in-fact enterprise, Ticketmaster conspired with Monumental Ticketing, the Lyric, the other Venues, and others in order to sell tickets to Baltimore City events, as well as to impose service charges in violation of the Baltimore City Code, and to collect illegal kickbacks through the imposition of service charges.   In this enterprise, Monumental Ticketing sold tickets to Baltimore City events and charged the illegal service charges through its outlets and ticketing systems to customers at the behest of Ticketmaster, and Ticketmaster sold tickets to Baltimore City events at the Lyric and other venues, charging and collecting illegal service charges through its Internet website on behalf of Monumental Ticketing, the Lyric, and the other venues, pursuant to written agreements between Monumental Ticketing and the Lyric and the other venues, and between Monumental and Ticketmaster Entertainment.

17

66.    These written agreements set forth the role of each conspirator in their conspiracy to sell tickets to Baltimore City events and to charge illegal service charges. These written agreements provide evidence of the association-in-fact enterprise and show its hierarchy and chain-of-command.

67.    The association-in-fact enterprise described herein has functioned as a continuing unit since its inception in or about 1991. Certain members of the enterprise have, over time, left, or been re-named. For example, Monumental Ticketing was previously known as Ticketmaster Group Limited Partnership, and this re-naming was due to the replacement of certain other conspirators in the association-in-fact enterprise with different conspirators – such as new owners of the Monumental Ticketing entity. Nevertheless, the association-in-fact unit has continued as a coherent association, the method of selling tickets to Baltimore City events while imposing illegal service charges and facility fees has remained the same or substantially similar, and the method of divvying up the proceeds of the illegal Scalping Racket has remained the same or substantially similar throughout the duration of the association-in-fact.

68.    The enterprises described above – Monumental Ticketing and the alternative association-in-fact - did not exist solely for the purpose of engaging in predicate acts violating RICO, but the enterprises also engaged in legitimate activities over the same period of time.

c.  The Pattern of Racketeering Activity

69.    The Scalping Racket described herein constituted a pattern of racketeering activity undertaken by Defendants and their co-conspirators.

70.    The Scalping Racket involved a fraudulent scheme and numerous

18

misrepresentations to the Defendants' customers. For example, with respect to each of the sales of tickets to customers, Defendants made and conspired to make misrepresentations that the service charges they were imposing were legitimate and collectible, that the fees represented charges for "service" and not for secret kickbacks between and among the Defendants designed to allow the Lyric to obtain more than their advertised ticket price for the sale of those tickets, and that the charges were legal. These same misrepresentations were made in many thousands of transactions with the Defendants' customers, including the transaction of the Named Plaintiff.

71. As discussed above, in the Named Plaintiff's transaction, the Defendants made the misrepresentation that the $12.00 in service charges they charged and collected from him were legitimate and collectible, and misrepresented the ticket price payable to the Lyric as not including the service charge kickback. Similar misrepresentations occurred in each of the transactions of the other members of the Class.

72. In addition, the Defendants and co-conspirators made numerous fraudulent representations and omissions of material fact to third parties in furtherance of the Scalping Racket. Among other things, Ticketmaster represented in the course of contracting with promoters, artists, and others with interest in ticket sales that the Defendants were legitimate ticket agencies authorized to sell tickets to Baltimore City events and to charge the service charges they imposed, and that the ticket revenue of the Lyric did not include kickbacks from Ticketmaster's service charges. The Lyric advertised its ticket prices without including the kickback it knew it would receive from Ticketmaster in connection with each ticket sale, intentionally concealing the fact that it intended to collect more from each of its customers than the advertised ticket price.

19

73.   The Defendants utilized the U.S. mails to effectuate their fraudulent scheme. For example, the Defendants and their co-conspirators on hundreds or thousands of occasions used and caused to be used, mail depositories of the United States Postal Service by both placing and causing to be placed mailable matters in said depositories and by removing and causing to be removed mailable matter from said depositories. These mailings included, but were not limited to, the mailing of tickets to members of the Class, the mailing of contracts and other documents and the distribution of money to the Lyric by Ticketmaster, and to Ticketmaster by the Lyric, and to other venues, promoters, artists, and other entities on whose behalf Defendants contracted to sell tickets, as well as the distribution of illicit proceeds of the racketeering conspiracy, as well as the mailing of contracts between the co-conspirators, and other documents, which facilitated the operation of the fraudulent scheme.

74.   In addition, the Defendants used the wires in furtherance of and for the purpose of executing the scheme and artifice to defraud. The Defendants and their co-conspirators on hundreds or thousands of occasions also used and caused to be used, telephone and other wire transmissions including, but not limited to, use of the wires in the course of selling tickets to Plaintiff and members of the Class - for marketing the tickets, providing a forum for the sale of the tickets, and securing payment for the tickets - with the intent to defraud, and in furtherance of the scheme to defraud. For example, on or about November 9, 2009, the Defendants used the wires to sell a ticket to Named Plaintiff via the Internet, and to charge and collect the illegal service charges described herein from Named Plaintiff. Defendants used the Internet and the wires in connection with the sale of thousands of other tickets to other members of the Class. In addition,

Defendants used the wires to send contracts and other documents to the Lyric and other venues, promoters, and other entities on whose behalf Defendants contracted to sell tickets, and to distribute money to those entities. The Lyric distributed funds to Ticketmaster obtained from the fraudulent scheme through wire transfers, and Ticketmaster distributed funds to the Lyric obtained through the fraudulent scheme through wire transfers. Each such use of the wires was in furtherance of the fraudulent scheme described herein. The Defendants also used the wires to sell tickets and impose illegal service charges on the other members of the Class. In addition, the Defendants used the wires to communicate with each other and their co-conspirators in the course of operating the Scalping Racket, and to facilitate the operation of the Scalping Racket, through telephone calls, facsimile and E-mail transmissions, and wire transfers of money both resulting from the fraudulent scheme and to fund the operation of the fraudulent scheme.

75.    Also as set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the Defendants on hundreds or thousands of occasions transported, transmitted, and transferred in interstate or foreign commerce goods, wares, merchandise, and money of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, in violation of 18 U.S.C. §2314. Defendants caused the money Plaintiff and the other members of the Class paid for the illegal service charges imposed and collected by Defendants – having a value of far more than $5,000 - to be transported in interstate commerce, in the course of the execution of the Defendants' scheme and artifice to defraud. The Defendants knew this money was stolen, converted or taken by fraud. In addition, upon information and

21

belief, the Defendants divvy up their profits secured from charging amounts in excess of the face value of tickets for admission to events in Baltimore City and amounts used as illegal kickbacks, and those profits – constituting far more than $5,000 – are distributed through interstate commerce.

76.     At all relevant times herein, in connection with the activities giving rise to this action, the Defendants conspired with each other, and other persons and entities, to engage in the various activities set forth herein, agreed to participate in the operation of the conspiracy and scheme to defraud Plaintiff and other customers, and aided and abetted one another in these activities, all as proscribed by both Maryland and federal law.

77.     The co-conspirators repeated this pattern – that is, the use of the U.S. mails and/or telephone or wire transmissions in furtherance of their fraudulent scheme, and transporting and causing others to transport money and property with a value exceeding $5,000 in interstate commerce both in furtherance of the fraudulent scheme and knowing the same to have been stolen, converted or taken by fraud – in connection with thousands of similar transactions. Each such use of the U.S. mails and/or wires in connection with the scheme and artifice to defraud constituted the offense of mail fraud as proscribed and prohibited by 18 U.S.C. §§ 1341 and/or 1343. Each such transportation of money or property with a value exceeding $5,000 in interstate commerce in connection with and in furtherance of the scheme and artifice to defraud, and knowing the same to have been stolen, converted or taken by fraud, constituted the offense of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. §2314.

78.     These uses of the U.S. Mails and wires, and the interstate transport of

money converted or fraudulently obtained, to further the fraudulent scheme were not limited to the transactions of the Named Plaintiff, but also occurred in the transactions of each member of the Class. Each member of the Class and Subclass completed a transaction in which the Defendants sold a ticket for admission to an event in Baltimore City, in which the Defendants charged the Class member service charges in addition to the face value of that ticket, and which included amounts used for illegal kickbacks between and among the Defendants. These acts were related, as they had the similar purpose of concealing and affirmatively misrepresenting collectability of the charges imposed on Defendants' customers, and the same methods of commission of the concealment and affirmative misrepresentation.

79.     Defendants' enterprise has operated continuously from or before 1991 to the present and affected thousands of customers' transactions through the use of the systematic scheme to charge bogus and illegal fees, and amounts denominated as fees for service which were actually paid as kickbacks, in connection with ticket sales. The Defendants participated and engaged in the enterprise and functioned as continuing units identifiable over a period of time and were involved in the transactions involving the Named Plaintiff and other members of the Class over a period spanning approximately two decades and involving thousands of transactions. The Defendants' use of the U.S. mails and wires interstate, and the interstate transport of money and property with a value exceeding $5,000 as described herein constitutes multiple instances of wire and mail fraud, multiple instances of interstate transport of money converted or fraudulently obtained, and further constitutes a pattern of racketeering activity.

80.     If Plaintiff and Class members had then suspected that Defendants were

operating a racketeering enterprise to facilitate the fraudulent scheme described herein, at the expense of Named Plaintiff and the other members of the Class, they would have refused to conduct business with Defendants and their enterprise, would not have entered into transactions with Defendants, and would have sought to secure their rights under the law at that time. Plaintiff and the other members of the Class relied upon the overall legitimacy of their transactions, and were damaged by, among other things, paying the illegal service charges Defendants represented as legitimate and collectible.

81.    Plaintiff and Class members' injuries to their property were caused by Defendants' continuous operation of the enterprise and the reinvestment of illicit funds from the enterprise back into the enterprise, in that Plaintiff and Class members were overcharged for their ticket purchases as a result of the pattern of racketeering activity described herein.

82.    The injuries to property of Named Plaintiff and the other members of the Class were also caused by the pattern of racketeering activity of the enterprise, in that Named Plaintiff and the other members of the Class were overcharged for their ticket purchases as a result of the Defendants' fraudulent scheme which constituted a pattern of racketeering activity, and the profits obtained through the fraudulent scheme were then split between the enterprise's members according to a prior written contract or other agreement.

## VIII.   CAUSES OF ACTION

### COUNT I
### Money Had and Received
(Against All Defendants)

24

83.    Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs as if fully set forth herein.

84.    As set forth above, Defendants assessed and collected and conspired to assess and collect service charges from Plaintiff and the other members of the Class in excess of the face value of the tickets purchased by Plaintiff and the other members of the Class, which included amounts paid as illegal kickbacks between and among Ticketmaster, the Lyric, and other venues.

85.    By doing so, Defendants have come into the possession of money in the that they had, and have, no right to at law or in equity.

86.    It would be inequitable for Defendants to retain any such monies that they had no legal right to charge.

87.    Defendants conspired with one another by common agreement or understanding, for: (a) the unlawful purpose of depriving Plaintiff and Class members of their rights under the statutory provisions and common law, as alleged herein; and (b) the purpose of unlawfully depriving Plaintiff and Class members of both their money and property.

88.    The Defendants, acting with each other, did unlawfully deprive Plaintiff and the other members of the Class of both their money and property and the rights alleged herein by the overt acts alleged herein, all of which were performed to advance the conspiracy.

89.    In furtherance of said conspiracy, Defendants both individually and in concert with one another committed the overt acts or omissions alleged herein, to the economic loss and injury of Plaintiff and the other members of the Class.

25

90.    The acts and omissions of the Defendants damaged and caused injury and loss to Plaintiff and the other members of the Class.

WHEREFORE, Plaintiff and the Class pray that:

A. The Court determine, as provided by Md. Rule 2-231, that this action proceed as a class action;

B. Plaintiff and the other members of the Class recover damages determined to have been sustained by each of them, including all amounts they paid in addition to the face value of the tickets they purchased, and that judgment be entered against the Defendants, jointly and severally, for the amount determined, including pre-judgment interest, in an amount to be determined by the jury;

C. Plaintiff and the members of the Class recover the costs and expenses of this suit;

D. The Court grant such other and further relief as the case may require, including equitable and/or injunctive relief.

## COUNT II
### Negligent Misrepresentation
(Against All Defendants)

91.    Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs as if fully set forth herein.

92.    Defendants, themselves or through their agents or employees, negligently and recklessly made the false and misleading representations and/or omissions alleged herein, including but not limited to the representations that the amounts charged in addition to the face value of the tickets sold by Defendants to Plaintiff and the other

26

members of the Class were legitimate and collectible, and that fees charged as "service" charges were for service when they were kicked back to venues such as the Lyric, intending that Plaintiff and the other members of the Class reasonably rely upon the false and misleading representations and omissions to their detriment, which they did.

93.     As a direct and proximate result of the false and misleading statements, representations and/or omissions, Plaintiff and the other members of the Class were induced, *ab initio*, to pay charges which are prohibited under the Baltimore City Code in connection with the purchase of tickets to events in Baltimore City, and which were used as illegal kickbacks.

94.     Defendants, their agents or employees, owed a duty of care to Plaintiff and the other members of the Class.

95.     Defendants recklessly and negligently breached the duty of care they owed to Plaintiff and the other members of the Class by making false and misleading representations and/or omissions to Plaintiff and the other members of the Class and concealing material facts from them, as set forth herein.

96.     Defendants knew, or had reason to know, that Plaintiff and the other members of the Class would reasonably rely on the representations and/or omissions and concealments which, as erroneous, would cause loss, injury or damage.

97.     Plaintiff and the other members of the Class justifiably and reasonably took actions to their detriment as alleged herein, in reliance on the false representations and/or omissions and concealments.

WHEREFORE, Plaintiff and the Class pray that:

27

A. The Court determine, as provided by Md. Rule 2-231, that this action proceed as a class action;

B. Plaintiff and the other members of the Class recover damages determined to have been sustained by each of them, including all amounts they paid in addition to the face value of the tickets they purchased, and that judgment be entered against the Defendants, jointly and severally, for the amount determined, including pre-judgment interest, in an amount to be determined by the jury;

C. Plaintiff and the members of the Class recover the costs and expenses of this suit;

D. The Court grant such other and further relief as the case may require, including equitable and/or injunctive relief.

**COUNT III**
**Violation of the Maryland Consumer Protection Act**
(Against All Defendants)

98.    Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs as if fully set forth herein.

99.    Defendants are merchants within the meaning of the Maryland Consumer Protection Act (CPA), MD. CODE ANN., COMM. LAW § 13-101(g), and are subject to all of the CPA's provisions prohibiting unfair or deceptive trade practices including those in MD. CODE ANN., COMM. LAW §§ 13-301 and 13-303.

100.    Defendants' imposition and collection of illegal service charges in violation of the Baltimore City Code, and Defendants' misrepresentations that the illegal service charges were legitimate and collectible, and their concealment from Named

28

Plaintiff and the other members of the Class of the material fact that these service charges were, in fact, illegal and non-collectible, constitute unfair and deceptive trade practices in violation of the CPA, MD. CODE ANN., COMM. LAW §§ 13-301(1), (2)(i) and (iv) (3), (5), (9) and 13-303. If Named Plaintiff and the other members of the Class had known that the service charges imposed by Defendants were illegal and non-collectible, they would not have paid those service charges. Moreover, Defendants illegally suppressed and concealed the fact that the Lyric was obtaining more than its advertised ticket price in connection with each and every ticket sold to Lyric events, through the kickbacks paid to the Lyric by Ticketmaster from the service charges Ticketmaster imposed.

101. Defendants' collection and conspiracy to collect amounts as service charges which were actually paid by Ticketmaster as kickbacks to increase the revenue of the Lyric and other Venues above advertised ticket prices, and their concealment from Named Plaintiff and the other members of the Class of the material fact that these service charges were, in fact, illegal and non-collectible, and the Lyric's bait-and-switch advertising of the price of its tickets described herein constitute unfair and deceptive trade practices in violation of the CPA, MD. CODE ANN., COMM. LAW §§ 13-301(1), (2)(i) and (iv) (3), (5), (9), and 13-303. If Named Plaintiff and the other members of the Class had known that the service charges imposed by Defendants were illegal and non-collectible, they would not have paid those service charges.

102. On information and belief, Named Plaintiff avers that Defendants regularly and systematically impose and collect illegal service charges, including amounts used as kickbacks, and misrepresent the actual amount to be paid to venues such as the Lyric for purchasing tickets, in connection with the sale of tickets to events in

Baltimore City, in violation of the CPA, and in order to illegally increase profits at the expense of consumers.

103.    Defendants' acts and omissions as aforesaid, including their failure to disclose, and concealment of, the material facts that the service charges imposed by Defendants were illegal and non-collectible, and Defendants' affirmative misrepresentations to Named Plaintiff and the other members of the Class that the service charges were legitimate and collectible, tended to and did deceive Plaintiff and the other members of the Class and constitute unfair and deceptive trade practices, in violation of MD. CODE ANN., COMM. LAW §§ 13-301(1), (2)(i) and (iv), (3), (5), (9), and 13-303(1) - (3).

104.    As a result of Defendants' unfair and deceptive trade practices, Named Plaintiff and the other members of the Class agreed to and did purchase tickets from Defendants and paid illegal and non-collectible service charges to Defendants, and Named Plaintiff and the other members of the Class sustained other damages and losses as set forth above.

105.    The Defendants reached an agreement or understanding to violate the Maryland Consumer Protection Act in their transactions with Plaintiff and the other members of the Class, and worked in combination with each other to facilitate and engage in a conspiracy to violate the Maryland Consumer Protection Act.

106.    Defendants' failure to comply with the provisions of the Baltimore City Code in their transactions with Named Plaintiff and the other members of the Class constituted deceptive and unfair acts within the meaning of the Maryland Consumer Protection Act. Defendants engaged in the suppression and omission of material facts

30

and affirmative misrepresentations, identified herein, that had the capacity, tendency or effect of deceiving or misleading the Named Plaintiff and the other members of the Class, and that did in fact deceive or mislead Named Plaintiff and the other members of the Class, and conspired to do so, causing Named Plaintiff and the other members of the Class injury and loss.

WHEREFORE, Plaintiff and the Class pray that:

A. The Court determine, as provided by Md. Rule 2-231, that this action proceed as a class action;

B. Plaintiff and the other members of the Class recover damages determined to have been sustained by each of them, including all amounts they paid in addition to the face value of the tickets they purchased, and that judgment be entered against the Defendants, jointly and severally, for the amount determined, including pre-judgment interest, in an amount to be determined by the jury;

C. The Court award Plaintiff and the other members of the Class reasonable costs and attorneys' fees; and,

D. The Court award Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## COUNT IV
### Deceit By Non-Disclosure or Concealment
(Against All Defendants)

107.    Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs as if fully set forth herein.

108.    Defendants regularly impose and conspire to impose service charges in

31

addition to the face value of said tickets in violation of the Baltimore City Code in order to increase their profits, and without disclosing to their customers the fact that the service charges imposed and collected are, in fact, illegal and non-collectible.

109.    Defendants regularly collect and conspire to collect amounts as service charges which are actually paid by Ticketmaster as kickbacks to increase the revenue of the Lyric above advertised ticket prices.

110.    The transaction entered into by the Named Plaintiff with Defendants is one representative sample of the Defendants' systematic fraud on the public.

111.    Defendants have a duty to not charge illegal and non-collectible service charges to Named Plaintiff and the other members of the Class in connection with the sale of tickets, and to disclose the fact that said service charges are illegal and non-collectible. Defendants also have a duty to refrain from falsely advertising the amount to be paid to venues such as the Lyric for the purchase of tickets, and to not conceal the kickbacks paid between the Defendants as a portion of "service charge" revenue. The Defendants' concealment and failure to make required disclosures constituted material omissions by Defendants in the course of each transaction.

112.    Through their concealments of material fact, Defendants intended to induce Named Plaintiff and the other members of the Class to act differently than they would have acted had they known the true facts.

113.    Because of Defendants' concealment of the aforesaid material facts, Named Plaintiff and the other members of the Class acted in a manner different from how they would have acted had Named Plaintiff and the other members of the Class known that the charges imposed by Defendants in excess of the face value of their tickets were

32

illegal and non-collectible. Had Named Plaintiff and the other members of the Class known the charges imposed by Defendants in excess of the face value of the tickets sold were illegal and non-collectible and included secret kickbacks, they would not have paid those charges.

114. The Defendants reached an agreement or understanding to knowingly and willfully cheat and defraud Named Plaintiff and the other members of the Class, to engage in the scheme and artifice to defraud Named Plaintiff and the other members of the Class through their intentional concealment of the fact that the charges imposed by Defendants in excess of the face value of the tickets sold were illegal and non-collectible and included secret kickbacks, and worked in combination with each other to facilitate and engage in a conspiracy to deceive and defraud.

115. As a result of Defendants' concealment of the aforesaid material facts, Named Plaintiff and the other members of the Class sustained the losses and damages set forth above.

116. Defendants' imposition on Named Plaintiff and the other members of the Class of illegal and non-collectible charges in excess of the face value of the tickets sold to Named Plaintiff and the other members of the Class, and Defendants' conspiracy to impose said illegal charges, was motivated by Defendants' actual malice toward Named Plaintiff and the other members of the Class. Defendants intended to and did injure Named Plaintiff and the other members of the Class by tricking them into paying significantly more for their tickets than they would have paid had Defendants not concealed their illegal activities.

117. Plaintiff and the Class aver that unless and until a jury awards significant

33

punitive damages against Defendants, Defendants will continue to violate the law as part of their ongoing scheme to obtain profits illegally at the retail public's expense.

WHEREFORE, Plaintiff and the Class pray that:

A. The Court determine, as provided by Md. Rule 2-231, that this action proceed as a class action;

B. Plaintiff and the other members of the Class recover damages determined to have been sustained by each of them, including all amounts they paid in addition to the face value of the tickets they purchased, and that judgment be entered against the Defendants, jointly and severally, for the amount determined, including pre-judgment interest, in an amount to be determined by the jury;

C. Plaintiff and the other members of the Class be awarded punitive damages in an amount to be determined by the jury;

D. Plaintiff and the members of the Class recover the costs and expenses of this suit, including reasonable attorneys' fees;

E. The Court grant such other and further relief as the case may require, including equitable and/or injunctive relief.

## COUNT VI
### Violation of RICO - 18 U.S.C. § 1962(a)
(Against Ticketmaster Entertainment and the Lyric)

118.    Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs as if fully set forth herein.

119.    Plaintiff and each class member is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

34

120.    Ticketmaster Entertainment, the Lyric and each other co-conspirator is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a).

121.    Monumental Ticketing constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a), which enterprise was engaged in, and the activities of which affect, interstate commerce.

122.    Each of the Co-Conspirators, including Ticketmaster Entertainment and the Lyric, was associated with the "enterprise" and did use or invest income derived from a pattern of unlawful activity under 18 U.S.C. §§ 1961(1) and (5) to operate, maintain control of, and maintain an interest in the enterprise.

123.    These unlawful activities included multiple instances of mail and wire fraud, including but not limited to use of the mails and wires in furtherance of the Defendants' fraudulent omissions and their illegal ticket scalping scheme, faxed and emailed documents and bank wired monies in violation of 18 U.S.C. §§ 1341 and 1343, which occurred uniformly and consistently during the existence of the "enterprise" between 1991 and continuing to the present.

124.    Through the enterprise, Monumental Ticketing, Ticketmaster Entertainment, the Lyric, and their other co-conspirators conducted and concealed the Scalping Racket, and concealed and laundered illegal scalping payments to themselves.

125.    Through the use of this illegal and fraudulent scheme, and through its efforts to operate and maintain the enterprise described herein and to maintain the conspiracy to facilitate the payment of illegal scalping fees to Ticketmaster Entertainment, the Lyric, and the other co-conspirators, and illegal kickbacks to the

Lyric, the co-conspirators have been able to launder illegal scalping payments to themselves in violation of both Federal and State Law.

126.    The co-conspirators retained these illegally gained funds and reinvested and used those funds in their operations in violation of 18 U.S.C. § 1962(a).

127.    Plaintiff and all Class members have been injured in their property by reason of the operation of the enterprise in this unlawful manner.

WHEREFORE, Plaintiff prays that the Court:

A. The Court determine, as provided by Md. Rule 2-231, that this action proceed as a class action;

B. Pursuant to 18 U.S.C. §1964(c), award Plaintiff and the Class members their damages suffered by reason of the illegal acts set forth herein, including amounts paid as "service charges" and kickbacks, plus treble damages and pre-judgment interest, in an amount to be determined by the jury;

C. Plaintiff and the other members of the Class be awarded punitive damages in an amount to be determined by the jury;

D. Plaintiff and the members of the Class recover the costs and expenses of this suit, including reasonable attorneys' fees;

E. The Court grant such other and further relief as the case may require.

## COUNT VII
### Violation of RICO - 18 U.S.C. § 1962(a)
### Association-in-Fact
### (Against All Defendants)

128.    Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs as if fully set forth herein.

129.    Named Plaintiff and each Class member are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

130.    Each Defendant and each other co-conspirator is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 18 U.S.C. 1962(a).

131.    Defendants and the other co-conspirators formed an association-in-fact with each other which constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a), which enterprise was engaged in, and the activities of which affect, interstate commerce.

132.    Each of the Defendants and co-conspirator used proceeds derived from a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5) to acquire an interest in, establish, and operate the enterprise.

133.    These unlawful activities included multiple instances of mail and wire fraud, including but not limited to the mail and wire fraud described in part VII above, and bank wired monies in violation of 18 U.S.C. §§ 1341 and 1343, which occurred uniformly and consistently during the existence of the "enterprise" and permitted Defendants and the other Co-Conspirators to maintain and operate it.

134.    These unlawful activities also included multiple instances of interstate transport of money converted or fraudulently obtained, including but not limited to the interstate transport of money converted or fraudulently obtained described in part VII above, which occurred uniformly and consistently during the existence of the "enterprise" and permitted Defendants and the other co-conspirators to maintain and operate it.

135.    The purpose of the enterprise created by the Defendants was to pool resources and expertise to acquire, advertise and sell tickets to entertainment and other

events in the Baltimore Washington metropolitan area.

136.   The association-in-fact had a common or shared purpose, that is to sell tickets to events in the Baltimore Washington area including tickets to events in Baltimore City. It has continued as a unit, with a core membership, over a substantial period of time, exceeding 20 years, and is an ongoing organization established for an economic motive. Although the membership in the enterprise has changed, and some of the co-conspirators were added into or replaced within the enterprise over time, the structure of the organization and the functions undertaken by its members have remained constant. The association-in-fact remained viable and active at the time this action was filed.

137.   Defendants, and other co-conspirators, each played a substantial and distinct role in the scheme.

138.   For example, in this association-in-fact, upon information and belief, Defendant Ticketmaster Entertainment provided an exclusive license for Defendant Monumental Ticketing to operate a ticket sales business to sell tickets for admission to events in Baltimore City and other areas in the Baltimore Washington metropolitan area. Defendant Ticketmaster Entertainment, upon information and belief, also provided Defendant Monumental Ticketing with a platform for selling tickets via the Internet, and provided Defendant Monumental Ticketing with computer software and terminals for selling tickets. The Lyric provided tickets for the Ticketmaster Entities to sell, and served as an outlet to sell tickets for other venues and to collect service charges in addition to the face value of tickets for Ticketmaster and for itself. The Defendants conspired together and reached an agreement to impose "service charges" including

amounts used as kickbacks to increase the revenue of the Lyric above the advertised ticket price, on Plaintiff and the other members of the Class in connection with the sale of tickets.

139.    Each member of the Class entered into a transaction with Defendants in which the Defendants made fraudulent omissions and which concealed material facts that caused Plaintiff and members of the Class to act in reasonable reliance on the Defendants' material omissions, that Defendants were proceeding legitimately, and that the service charges and restoration charges, including kickbacks, were legitimate and collectible.

140.    These activities of the association-in-fact form a pattern, continuous in nature, which consists of numerous unlawful individual acts directed to the Named Plaintiff and each Class member. Defendants' illegal activities persisted over an extended period of time. The fraudulent omissions in the transactions of the Named Plaintiff and other members of the Class were done in furtherance of the conspiracy for which the Defendants are liable. The reliance of the Named Plaintiff and other members of the Class on the material omissions and falsehoods of Defendants was reasonable and justified because such omissions would and did cause persons of ordinary experience to be convinced of the legality and legitimacy of the operations of Defendants.

141.    These activities of the Defendants entailed multiple instances of mail fraud consisting of intentional mail fraud intended to induce, and inducing, Plaintiff and the Class to part with property and/or to surrender legal rights in violation of 18 U.S.C. § 1341.

142.    These activities of the Defendants also entailed multiple instances of wire

39

fraud consisting of intentional wire fraud intended to induce, and inducing, Plaintiff and the Class to part with property and/or to surrender legal rights in violation of 18 U.S.C. § 1343.

143.    These activities of the Defendants also entailed multiple instances of interstate transport of money converted or fraudulently obtained, in violation of 18 U.S.C. §2314.

144.    Through the use of this illegal and fraudulent scheme, and through their efforts to operate and maintain the enterprise described herein, to maintain the conspiracy and to facilitate the illegal charging of amounts in excess of the face value of tickets to events in Baltimore City, and to facilitate the payment of secret kickbacks from "service charge" revenue, the Defendants through their conspiracy have been able to retain money which is rightfully payable to Plaintiff and the other members of the Class, and to collect money not properly due from Plaintiff or the other members of the Class.

145.    The Defendants, through their conspiracy, retained these illegally gained funds and reinvested and used those funds in their operations in violation of 18 U.S.C. § 1962(a). Furthermore, the co-conspirators each previously acquired illicit funds through similar fraudulent operations involving mail and wire fraud and interstate transport of money converted or fraudulently obtained, and used said proceeds to continue their scheme by investing in and operating the enterprise.

146.    Through the use of the Defendants' illegal and fraudulent scheme to collect illegal "service charges," including amounts used to pay kickbacks, and through their efforts to operate and maintain the enterprise described herein and to maintain the conspiracy to facilitate the charging these fees, the Defendants through their conspiracy

have been able both to maintain the enterprise, and to profit from it at the expense of Named Plaintiff and the other members of the Class.

147.    Named Plaintiff and all Class members have been injured in their property by reason of the violations of §1962(a) because Plaintiff and all Class members were charged illegal fees by Defendants as a result of the reinvestment and use of funds by Defendants derived from the Defendants' pattern of racketeering activity to fund and operate their enterprise, and to facilitate and incentivize Defendants' conspiracy to illegally charge, and their actions in charging the illegal fees.

WHEREFORE, Plaintiffs pray that the Court:

A. The Court determine, as provided by Md. Rule 2-231, that this action proceed as a class action;

B. Pursuant to 18 U.S.C. §1964(c), award Plaintiff and the Class members their damages suffered by reason of the illegal acts set forth herein, including amounts paid as "service charges" and kickbacks, plus treble damages and pre-judgment interest, in an amount to be determined by the jury;

C. Plaintiff and the other members of the Class be awarded punitive damages in an amount to be determined by the jury;

D. Plaintiff and the members of the Class recover the costs and expenses of this suit, including reasonable attorneys' fees;

E. The Court grant such other and further relief as the case may require.

## COUNT VIII
### Violation of RICO - 18 U.S.C. § 1962(c)
(Against Ticketmaster Entertainment and the Lyric)

41

148.    Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs as if fully set forth herein.

149.    Plaintiff and each class member is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

150.    Defendants Ticketmaster Entertainment, Monumental Ticketing, the Lyric and each other co-conspirator are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962 (c).

151.    Monumental Ticketing constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), which enterprise was engaged in, and the activities of which affect, interstate commerce.

152.    Ticketmaster Entertainment was associated with the enterprise through its ownership and/or contractual interests in the enterprise, and the fraudulent and illegal scalping charges it obtained through the enterprise, and participated in its management and operation by entering into contracts to obtain illegal scalping fees with it and assisting in the fraudulent Scalping Racket. The Lyric was associated with the enterprise through its provision of tickets to be sold by the enterprise, its activities as a Ticketmaster Outlet selling tickets above face value and collecting "service charge" revenue for itself and Ticketmaster, and its receipt and agreement to pay kickbacks to and from the enterprise.   Ticketmaster Entertainment, the Lyric, and the other co-conspirators participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful activity under 18 U.S.C. § 1961(i)(b), 1961(5) and 1962(c), to wit:

(a)    Multiple acts of mail fraud, in violation of 18 U.S.C. § 1341;

(b)    Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and

(c)     Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

153.    Plaintiff and each Class member suffered injury to their property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(c).

WHEREFORE, Plaintiff prays that the Court:

A. The Court determine, as provided by Md. Rule 2-231, that this action proceed as a class action;

B. Pursuant to 18 U.S.C. §1964(c), award Plaintiff and the Class members their damages suffered by reason of the illegal acts set forth herein, including amounts paid as "service charges" and kickbacks, plus treble damages and pre-judgment interest, in an amount to be determined by the jury;

C. Plaintiff and the other members of the Class be awarded punitive damages in an amount to be determined by the jury;

D. Plaintiff and the members of the Class recover the costs and expenses of this suit, including reasonable attorneys' fees;

E. The Court grant such other and further relief as the case may require.

## COUNT IX
### Violation of RICO - 18 U.S.C. § 1962(c)
### Association-in-Fact
(Against All Defendants)

154.    Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs as if fully set forth herein.

155.    Named Plaintiff and each Class member are each "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

156.   The Defendants and each other co-conspirator is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

157.   The Defendants, through contractual arrangement and joint management activity, formed an association-in-fact with each other and their other co-conspirators, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

158.   Defendants and their other co-conspirators were each associated with the enterprise and participated in its management and operation by directing its affairs and by conducting business with each other and assisting in the fraudulent scheme described herein, to illegally collect "service charges" as described herein. The Defendants and their other co-conspirators each participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful activity under 18 U.S.C. § 1961(i)(b), 1961(5) and 1962(c), to wit:

> A.   Multiple acts of mail fraud, in violation of 18 U.S.C. § 1341;
>
> B.   Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and
>
> C.   Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

159.   Each Class member suffered injury to his or her property, within the meaning of 18 U.S.C. § 1964(c), by reason of the Defendants' violations of 18 U.S.C. § 1962(c).

WHEREFORE, Plaintiffs pray that the Court:

> A.   The Court determine, as provided by Md. Rule 2-231, that this action proceed as a class action;

44

B. Pursuant to 18 U.S.C. §1964(c), award Plaintiff and the Class members their damages suffered by reason of the illegal acts set forth herein, including amounts paid as "service charges" and kickbacks, plus treble damages and pre-judgment interest, in an amount to be determined by the jury;

C. Plaintiff and the other members of the Class be awarded punitive damages in an amount to be determined by the jury;

D. Plaintiff and the members of the Class recover the costs and expenses of this suit, including reasonable attorneys' fees;

E. The Court grant such other and further relief as the case may require.

## COUNT X
### Violation of RICO - 18 U.S.C. § 1962(d)
(Against Ticketmaster Entertainment and the Lyric)

160. Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs as if fully set forth herein.

161. Plaintiff and each member of the Class are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

162. Ticketmaster Entertainment, the Lyric, and each other co-conspirator is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(d).

163. Monumental Ticketing constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a), which enterprise was engaged in, and the activities of which affect, interstate commerce.

164.    Ticketmaster Entertainment, the Lyric, and the other co-conspirators were associated with the enterprise described herein, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(a).

165.    Ticketmaster Entertainment, the Lyric, and the other co-conspirators conspired to use or invest income derived from a pattern of unlawful activity under 18 U.S.C. § 1961(1) to operate, maintain control of, and maintain an interest in the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia,* multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

166.    The named Plaintiff and each Class member has suffered injury to property within the meaning of 18 U.S.C. § 1964(c) by reason of the commission of overt acts constituting illegal activity in violation of 18 U.S.C. §§ 1961(1), 1962(d).

WHEREFORE, Plaintiff prays that the Court:

A.   The Court determine, as provided by Md. Rule 2-231, that this action proceed as a class action;

B.   Pursuant to 18 U.S.C. §1964(c), award Plaintiff and the Class members their damages suffered by reason of the illegal acts set forth herein, including amounts paid as "service charges" and kickbacks, plus treble damages and pre-judgment interest, in an amount to be determined by the jury;

C.   Plaintiff and the other members of the Class be awarded punitive damages in an amount to be determined by the jury;

D. Plaintiff and the members of the Class recover the costs and expenses of this suit, including reasonable attorneys' fees;

E. The Court grant such other and further relief as the case may require.

## COUNT XI
### Violation of RICO - 18 U.S.C. § 1962(d)
### Association-in-Fact
(Against All Defendants)

167. Plaintiff incorporates herein and re-alleges each of the foregoing paragraphs as if fully set forth herein.

168. Named Plaintiff and each Class member are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

169. The Defendants and their other co-conspirators are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(d).

170. Defendants, through contractual arrangement and joint management activity, formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

171. The Defendants and their other co-conspirators were associated with the enterprise described herein, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(a) and (c).

172. The Defendants and their other co-conspirators each knew of the RICO violations of the enterprise and agreed to facilitate those activities.

173. The Defendants and other co-conspirators conspired to use or invest income derived from a pattern of unlawful activity under 18 U.S.C. § 1961(1) to acquire an interest in, establish and operate the enterprise and have done so through a pattern of

unlawful activity including under 18 U.S.C. § 1961(1), *inter alia,* multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. §2314.

174.    The Defendants and other co-conspirators conspired to operate, maintain control of, and maintain an interest in the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia,* multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. §2314.

175.    The Named Plaintiff and each Class member have suffered injury to his or her property within the meaning of 18 U.S.C. § 1964(c) by reason of the commission of overt acts constituting illegal activity in violation of 18 U.S.C. §§ 1961(1) and 1962(d).

WHEREFORE, Plaintiffs pray that the Court:

A. The Court determine, as provided by Md. Rule 2-231, that this action proceed as a class action;

B. Pursuant to 18 U.S.C. §1964(c), award Plaintiff and the Class members their damages suffered by reason of the illegal acts set forth herein, including amounts paid as "service charges" and kickbacks, plus treble damages and pre-judgment interest, in an amount to be determined by the jury;

C. Plaintiff and the other members of the Class be awarded punitive damages in an amount to be determined by the jury;

48

D.  Plaintiff and the members of the Class recover the costs and expenses of
this suit, including reasonable attorneys' fees;

E.  The Court grant such other and further relief as the case may require.

GORDON & WOLF, CHTD.

Dated:  November 22, 2011          By:

Martin E. Wolf (Bar No. 09425)
Richard S. Gordon (Bar No. 06882)
Benjamin H. Carney (Bar No. 27984)
102 W. Pennsylvania Ave., Suite 402
Towson, Maryland 21204
410- 825-2300 (telephone)
410-825-0066 (facsimile)
mwolf@quinnlaw.com
rgordon@quinnlaw.com
bcarney@quinnlaw.com

**Attorneys for Named Plaintiff
and the Class**

## JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

BENJAMIN H. CARNEY